JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
Y. DOUGLAS YANG, CA Bar No. 307550
douglas.yang@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
C.H. ROBINSON INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENA DAVID, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>C.H. ROBINSON INTERNATIONAL, INC., a Minnesota Corporation; and DOES 1-50,<br><br>          Defendants. | Case No. 2:18-cv-03268-FMO-E<br><br>**DEFENDANT C.H. ROBINSON INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF**<br><br>Date:          June 7, 2018<br>Time:          10:00 a.m.<br>Place:          Courtroom 6D, First St.<br><br>[Filed concurrently with Declaration of Jack S. Sholkoff; [Proposed] Order; Request for Judicial Notice]<br><br>Complaint Filed: June 16, 2017<br>Removal Date:    April 18, 2018<br>Trial Date:      None<br>District Judge:  Hon. Fernando M. Olguin<br>                 Courtroom 6D, First St.<br>Magistrate Judge: Hon. Charles F. Eick, Jr.<br>                 Courtroom 20, Spring St. |

34137650_1.docx

Case No. BC665242

CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID' MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................... 3

     A.    CHRI Initially Removes The Action, But The Court Remands It After Finding Insufficient Evidence To Establish The Requisite Amount In Controversy For Federal Jurisdiction. ........................................................ 3

     B.    CHRI Engages In Permissible Discovery To Determine The Amount In Controversy........................................... 4

     C.    Plaintiff Files A Motion To Compel A Further Discovery Response And Seeks Sanctions....................................... 5

     D.    Plaintiff Continues To Avoid Specifying Damages Solely To Try To Evade Federal Jurisdiction............................ 6

     E.    On March 19, 2018, CHRI First Receives An "Other Paper" That Shows That Plaintiff's Claims Exceed $75,000. ........................................................................ 7

     F.    CHRI Files Its Motion For Summary Judgment In Order To Preserve The Status Quo In State Court. ..................... 8

     G.    Plaintiff Prematurely Files The Instant Motion to Remand. ........... 8

III.    ARGUMENT................................................................... 10

     A.    CHRI's Removal To Federal Court Was Timely And Proper. ....................................................................... 10

          1.    The certified deposition transcript was the first "other paper" from which CHRI could ascertain that the amount in controversy exceeded $75,000............ 10

              (a)   Plaintiff's oral deposition testimony does not trigger the removal statute's 30-day clock. ............. 11

              (b)   Neither a rough draft of the transcript nor the LiveNotes of Plaintiff's oral deposition triggers the removal statute's clock. ........................ 14

          2.    Plaintiff's October 2017 discovery motion did not demonstrate removability.................................... 16

     B.    CHRI Did Not Waive Its Right To Remove This Matter To Federal Court By Litigating In State Court Before It Learned That The Case Was Removable. ..................... 18

     C.    Plaintiff's Request For Attorney's Fees Should Be

i

Case No. 2:18-cv-03268-FMO-E

CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

34137650_1.docx

Denied..........................................................................................22

    1.    The request for attorney's fees must be denied
        because CHRI had an objectively reasonable basis
        to remove this case to federal court. ...................................22

IV.    CONCLUSION...........................................................................24

34137650_1.docx

ii              Case No. 2:18-cv-03268-FMO-E

CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Acosta v. Direct Merchs. Bank,*
  207 F. Supp. 2d 1129 (S.D. Cal. 2002) ........................................ 18, 19

5

*Bechtelheimer v. Cont'l Airlines, Inc.,*
  755 F. Supp. 2d 1211 (M.D. Fla. 2010) ............................................. 20

6

7

*Bedell v. H.R.C. Ltd.,*
  522 F. Supp. 732 (E.D. Ky. 1981) .................................................... 20

8

*Bolden v. Healthspring of Ala., Inc.,*
  No. CV07-0413-CG-B, CV07-0414-CG-M, 2007 WL 4403588 (S.D.
  Ala. Oct. 2, 2007) ............................................................................ 19

9

10

*Bosky v. Kroger Texas, LP,*
  288 F.3d 208 (5th Cir. 2002) ........................................................... 12

11

*Carter v. Mae,*
  No. SACV 14-01754-CJC, 2014 WL 7339208 (C.D. Cal. Dec. 23,
  2014) ............................................................................................... 24

12

13

*Carvalho v. Equifax Info. Servs., LLC,*
  629 F.3d 876 (9th Cir. 2010) ........................................................... 13

14

15

*Curl v. Beltsville Adventist Sch.,*
  No. GJH-15-3133, 2016 WL 4382686 (D. Md. Aug. 15, 2016) .................... 21, 22

16

*Durham v. Lockheed Martin Corp.,*
  445 F.3d 1247 (9th Cir. 2006) ......................................................... 10

17

18

*Gardner v. UICI,*
  508 F.3d 559 (9th Cir. 2007) ........................................................... 23

19

*George v. Al-Saud,*
  478 F. Supp. 773 (N.D. Cal. 1979) .................................................. 19

20

21

*Godoy v. Winco Holding, Inc.,*
  Case No. 15-CV-01397-ODW-SP, 2015 WL 6394474 (C.D. Cal.
  Oct. 22, 2015) ................................................................................. 13

22

23

*Hess v. Bonneville Blling & Collections, Inc.,*
  No. 3:15-CV-05158-RBL, 2015 WL 3569230 (W.D. Wash. June 5,
  2015) ........................................................................................... 19, 20

24

25

*Hill v. State Farm Mut. Auto. Ins. Co.,*
  72 F. Supp. 2d 1353 (M.D. Fla. 1999) ............................................. 20

26

*Huffman v. Saul Holdings Ltd. P'ship,*
  194 F.3d 1072 (10th Cir. 1999) ........................................................ 13

27

28

34137650_1.docx

CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

*Jackson v. St. Jude Med. Neuromodulation Div.,*
    No. 214-CV-717-FTM-38DNF, 2015 WL 403227 (M.D. Fla. Jan.
    28, 2015) ............................................................................................. 22

*Jadwin v. Cty. of Kern,*
    767 F. Supp. 2d 1069 (E.D. Cal. 2011) .............................................. 24

*Jong v. Gen. Motors Corp.,*
    359 F. Supp. 223 (N.D. Cal. 1973) ...................................................... 10

*Kenny v. Wal-Mart Stores, Inc.,*
    881 F.3d 786 (9th Cir. 2018) ............................................................... 20

*Kosen v. Ruffing,*
    No. 08CV0793-LAB, 2009 WL 56040 (S.D. Cal. Jan. 7, 2009) ............... 19, 21

*Long v. BDP Int'l, Inc.,*
    919 F. Supp. 2d 832 (S.D. Tex. 2013) ................................................ 21

*Lussier v. Dollar Tree Stores, Inc.,*
    518 F.3d 1062 (9th Cir. 2008) ............................................................. 23

*Martin v. Franklin Capital Corp.,*
    546 U.S. 132 (2005) ............................................................................. 23

*Mendoza v. Am. Airlines, Inc.,*
    No. CV 10-7617 RSWL, 2010 WL 5376375 (C.D. Cal. Dec. 22,
    2010) .................................................................................................... 23

*Morgan v. Huntington Ingalls, Inc.,*
    879 F.3d 602 (5th Cir. 2018) .......................................... 11, 12, 13, 15

*S.W.S. Erectors, Inc. v. Infax, Inc.,*
    72 F.3d 489 (5th Cir. 1996) ................................................................ 11

*Trademark Remodeling, Inc. v. Rhines,*
    853 F. Supp. 2d 532 (D. Md. 2012) .................................................... 19

*Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP,*
    365 F.3d 1244 (11th Cir. 2004) .......................................................... 21

**Other State Cases**

*Owen v. L'Occitane, Inc.,*
    No. CV 12–09841 ................................................................................ 10

**Federal Statutes**

28 U.S.C. 1332(a)(1) ................................................................................. 1

28 U.S.C.
    § 1446(a) ............................................................................................. 15
    § 1446(b)(3) ............................................................................... *passim*
    § 1447(c) ............................................................................................. 22

## California Statutes

Cal. Civ. Proc. Code
  § 437c .................................................................................................. 21
  § 2025.540 .................................................................................... 14, 15
  § 2025.540(b) ....................................................................................... 1
  § 2033.220 ........................................................................................... 18

## Other Authorities

Local Rule 7-3 .................................................................................. 8, 9

Local Rule 83-7 .................................................................................... 9

# I.      <u>INTRODUCTION</u>

This Court possesses subject matter jurisdiction over the instant action.  The Parties agree that plaintiff Lorena David ("Plaintiff") and defendant C.H. Robinson International, Inc. ("CHRI") are citizens of diverse states.  They also agree that there is more than $75,000 in controversy in the action.  *See* 28 U.S.C. 1332(a)(1).  Moreover, CHRI timely removed the action pursuant to 28 U.S.C. 1446(b)(3).  Accordingly, the Court should deny Plaintiff's Motion for Remand and for attorney's fees.

<u>First</u>.  CHRI's April 18, 2018 Notice of Removal (ECF No. 3) is timely.  CHRI, cognizant of this Court's July 25, 2017 Order Remanding the Action (2:17-cv-05210-FMO-E, ECF No. 14), waited until it had received an "other paper" from which it could first "ascertain" that the amount in controversy in this matter exceeded $75,000.00, and then removed the case within 30 days thereafter.  The "other paper" was the certified transcript of the second day of Plaintiff's deposition.  Pursuant to California Code of Civil Procedure section 2025.540(b), only the *certified transcript* of the deposition – not the rough draft of the transcript or the LiveNotes instant transcription – has any legal effect, and only the certified transcript can be cited or used in legal proceedings.  Hence, only the certified transcript constitutes an "other paper" pursuant to 28 U.S.C. §1446(b)(3).  Since CHRI received the certified transcript on March 19, 2018 and removed the action 30 days later, it timely removed the action to federal court.

<u>Second</u>.  Counsel for Plaintiff's October 27, 2017 declaration did not constitute an "other paper" from which CHRI could have ascertained that there was in excess of $75,000.00 in controversy in this case.  Counsel's declaration does not, on its face, specifically state that Plaintiff had incurred enough attorney fees to push her claim over the jurisdictional threshold.  Plaintiff, in fact, concedes this.  On March 18, 2018 – well after she had filed the October 27, 2017 declaration – Plaintiff stated, under oath and in response to CHRI's *written* discovery requests, that ***she did***

***not have enough information to determine whether she was seeking in excess of $75,000 in damages, attorney's fees and costs in this action***.  Plaintiff cannot now contend that CHRI, in October, 2017, should have known that there was more than $75,000 in controversy in this action, when in March 2018, Plaintiff herself could not make this determination.

<u>Third</u>.  CHRI has not waived its right to remove this lawsuit to federal court just because it participated in litigation in state court.  CHRI initially attempted to remove the case immediately after it was filed; however, once it was remanded, CHRI had no choice but to defend the action in state court.  Nor is CHRI's filing of a motion for summary judgment just days before removing the case indicative of waiver, since CHRI filed the motion solely to preserve the *status quo* and to preserve CHRI's right to seek summary judgment in the event that the case was remanded.  Plaintiff has not filed an opposition to the motion for summary judgment, nor has the state court held a hearing on it.  The motion for summary judgment did not, as a matter of law, evince the kind of affirmative steps of submission to the state court's jurisdiction that courts require to constitute an act of waiver.

<u>Fourth</u>.  The Court should reject Plaintiff's request for attorney's fees in connection with her Motion to Remand.  Not only should the Motion for Remand be denied, but CHRI had an objectively reasonable basis for removing this matter in April 2018.  It had finally learned, despite Plaintiff's efforts to obfuscate the issue, that there was more than $75,000 at issue, based upon its receipt of the certified transcript of Plaintiff's deposition.  Moreover, Plaintiff's request for fees rests upon grossly inflated representations.

Plaintiff's Motion to Remand is without merit and must be denied.  This Court possesses subject matter jurisdiction over the action; CHRI timely removed this case to federal court.

///

///

2

CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   CHRI Initially Removes The Action, But The Court Remands It After Finding Insufficient Evidence To Establish The Requisite Amount In Controversy For Federal Jurisdiction.

CHRI initially removed the instant action within 30 days of service of the summons and Complaint, (2:17-cv-05210-FMO-E, ECF No. 1).  Subsequently, this Court issued an Order *sua sponte* remanding the action back to the state court. (2:17-cv-05210-FMO-E, ECF No. 14).  In its Order remanding the action, the Court wrote that "there is no basis for diversity jurisdiction because the amount in controversy does not appear to exceed the diversity jurisdiction threshold of $75,000." (*Id*. at p. 3).  Even though CHRI posited that "the amount in controversy threshold was met by aggregating all of plaintiff's estimated "recoverable damages, including emotional distress damages, punitive damages, statutory penalties, and attorneys' fees[,]" the Court, focusing upon the specific evidence, considered only the amount of estimated lost wages.  (*Id*.)  The Court declined to consider CHRI's estimate of Plaintiff's emotional distress damages because the Complaint did not specify a specific amount thereof, and thus "it would be too speculative to include these damages in the total amount in controversy." (*Id*.)  The Court also rejected CHRI's punitive damages estimate on the grounds that the cases CHRI cited in support of removal were not "evidence of punitive damages awards in factually similar cases[.]" (*Id*. at p. 4).  Finally, with respect to attorney's fees, the Court concluded that "***[f]uture attorneys' fees*** are ***entirely speculative, may be avoided***, and are therefore not 'in controversy' at the time of removal." (*Id*.) (citations omitted).[1]  The Court stated that only "***evidence*** of the amount of attorney's fees ***incurred at the time of*** removal" and ***not future, or speculative amounts***, counted when calculating the amount in controversy for removal purposes.  (*Id*. at p. 5). Since Plaintiff's lost wages at the time of removal were only $58,708.80, and since

---

[1] All emphasis herein is added unless otherwise stated.

the Court found insufficient evidence regarding any other potential sources of damages or fees, the Court remanded the action.

**B.**  **CHRI Engages In Permissible Discovery To Determine The Amount In Controversy.**

Sent back to state court, CHRI began defending the action. As part of its reasonable discovery efforts, CHRI sought information regarding Plaintiff's damages and attorney's fees.  On August 3, 2017, CHRI propounded multiple discovery requests to Plaintiff, including Form Interrogatories-Employment Law ("Interrogatories") and Requests for Production of Documents ("RFP"). (Declaration of Jack S. Sholkoff ("Sholkoff Decl."), ¶ 1).

Instead of providing straightforward responses, Plaintiff remained coy and sought to avoid federal court jurisdiction by refusing to provide any information that might establish the amount in controversy in the action. For example, one RFP specifically asked Plaintiff to produce "[a]ny and all DOCUMENTS that relate to, refer to, describe, or support the damages YOU claim to have suffered as a result of the allegations set forth in YOUR COMPLAINT."  (*Id*. at ¶1, Ex. 2, p. 8, RFP No. 24)  On October 19, 2017, Plaintiff responded that she would "produce all responsive documents in her possession, custody, or control[,]" "[t]o the extent any responsive documents exist[.]"  (*Id*. at ¶2, Ex. 4, pp. 37-38).  Yet Plaintiff did not produce any new documents concerning damages; she chose instead to re-produce documents previously provided to her by CHRI, which left CHRI in the same position it stood on the date it initially removed this matter to federal court.  (*Id*. at ¶ 3).

CHRI propounded Form Interrogatory No. 210.2, which asked Plaintiff to "[s]tate the total amount of income, benefits, or earning capacity you have lost to date and how the amount was calculated."  (Sholkoff Decl., ¶1, Ex. 1, p. 6).  On October 19, 2017, Plaintiff responded that she had incurred $73,929.60 in lost income.  (*Id*. at ¶ 2, Ex. 3, p. 24).  While this was higher than the amount at the time

of the previous removal, it still fell short of the $75,000.00 threshold for federal court jurisdiction.  Plaintiff also stated that should would lose income, benefits, and earning capacity going forward, but did not provide any numerical figure reflecting future loss of income. (*Id*. at Ex. 3, p. 25).  In response to one of the Interrogatories which asked her to "[i]dentify each physical, mental, or emotional injury" that she attributed to CHRI's actions, Plaintiff claimed to suffer from numerous symptoms of emotional distress, but then stated that "[w]ithout calculation of this loss by an expert, Plaintiff is unable to give specific dollar amounts."  (*Id*. at Ex. 3, p. 25). Plaintiff did not identify any expert(s) who may be questioned concerning the value of her emotional distress damages. (*Id*. at ¶ 4). Plaintiff did not provide CHRI with *any* evidence concerning the amount of attorney's fees she had incurred in defending the action.  (*Id*.)

Thus, as of October 19, 2017, CHRI could not ascertain with specific evidence that the amount in controversy did in fact exceed $75,000.00.  At most, based upon Plaintiff's discovery responses, CHRI only had evidence to ascertain that the amount in controversy as of that date was $73,929.60.

### C.    Plaintiff Files A Motion To Compel A Further Discovery Response And Seeks Sanctions.

On October 27, 2017, Plaintiff filed in state court a motion to compel a further discovery response and a request for *monetary sanctions.* (Sholkoff Decl., ¶ 5, Ex. 5).  Plaintiff's Counsel declared under penalty of perjury that he had only "spent 3.0 hours preparing the moving papers and supporting declaration . . .[,]" which at a billing rate of $300 per hour meant that the amount of attorney's fees actually occurred was $900.  (*Id*. at Ex. 6, p. 4).[2]  While Plaintiff's Counsel stated that he "anticipated" incurring additional fees, Plaintiff never provided a subsequent

---

[2] Thus, even if this amount could be considered as part of the amount in controversy, the amount in controversy still only totaled $74,829.60 – short of the $75,000.00 threshold.

CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

declaration stating that he had ***actually incurred*** them or that he had charged them to his client.

On November 27, 2017, the state court ruled on Plaintiff's motion to compel and ***denied*** Plaintiff's request for sanctions. (Sholkoff Decl., ¶6; Request for Judicial Notice, Ex. A). Following the state court's denial of Plaintiff's request for sanctions, it is unclear whether the original $900 in fees cited in Plaintiff's Counsel's declaration remained at issue or whether, with the state court having refused to grant the sanctions, Plaintiff's Counsel would not require Plaintiff to incur the fees. In short, with the state court's denial of Plaintiff's request for sanctions, it was no longer clear whether the fees remained incurred or still at issue. Certainly, the amount of Plaintiff's attorneys fees actually incurred remained highly speculative.

### D. Plaintiff Continues To Avoid Specifying Damages Solely To Try To Evade Federal Jurisdiction.

Unable to affirmatively ascertain whether the amount in controversy did in fact exceed $75,000.00 following a round of general discovery, CHRI proceeded to serve targeted discovery that was expressly designed to elicit evidence concerning the amount in controversy in this matter. (Sholkoff Decl., ¶ 8). After all, Plaintiff's refusal to concede that she was seeking more than $75,000.00 in this case appeared farcical. Plaintiff knew that she seeking more than $75,000.00 in this action, even if Plaintiff would not actually admit it and there was, as of that time, no specific "other paper" showing it. On February 16, 2018, CHRI served three sets of discovery requests, which included interrogatories and requests for admission, ***all of which*** concerned the amount in controversy. (*Id*. at Exs. 8, 9, 10). In particular, Request for Admission No. 8 stated: "Admit that YOU ***seek*** more than $75,000 in damages, attorneys fees, and costs from DEFENDANT in this Action." (*Id*. at Ex. 9, p. 4).

On March 18, 2018, Plaintiff served a mix of evasive responses and straight objections to all of CHRI's written discovery. (Sholkoff Decl., ¶ 9, Exs. 11, 12, 13). In response to the Request for Admission No. 8 described above, Plaintiff, after

34137650_1.docx

6                                                          Case No. 2:18-cv-03268-FMO-E
CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

mentioning that her lost income was based upon an hourly rate of $27.14, stated that after a reasonable inquiry, she lacked sufficient information to admit or deny the Request. (*Id*. at Ex. 12, 15:4-16:23). Clearly, if **Plaintiff**, as of March 18, 2018, had **insufficient** information regarding the amount that she was seeking in this action and could not admit that she was **seeking** more than $75,000.00 in the action, CHRI could not have had this information. Moreover, if Plaintiff, as she now seems to claim, had incurred $1,860 in attorney's fees in October 2017, placing her claim over $75,000.00, she would have known this when she responded to her discovery in March 2018. And she would have, therefore, admitted that there was more than $75,000.00 in controversy in this action. But she did not. Presumably, Counsel for Plaintiff's October 2017 declaration meant what it said: in preparing the motion to compel, Plaintiff only incurred, at most, $900 in attorney's fees which was not enough to put this case over the $75,000 jurisdictional threshold. This would explain why Plaintiff refused to admit that she was seeking more than $75,000.00 in her March 18 responses to CHRI's Requests for Admission.

**E.     On March 19, 2018, CHRI First Receives An "Other Paper" That Shows That Plaintiff's Claims Exceed $75,000.**

On February 12, 2018, CHRI took the first of what would become two deposition sessions of Plaintiff. Plaintiff did not provide any information regarding her alleged damages or claims during this session of her deposition. (Sholkoff Decl., ¶ 7, Ex. 7). On March 5, 2018, CHRI resumed its deposition of Plaintiff. It received the certified transcript of this session of the deposition on March 19, 2018 (the "Certified Deposition Transcript"). (*Id*. at ¶ 12, Ex. 15). The March 5, 2018 deposition was conducted using LiveNotes, and a rough draft of the deposition – a document that cannot be used for any official purpose pursuant to California law – was received by CHRI on March 6, 2018. (*Id*. at ¶¶ 10-11). The Certified Deposition Transcript is the "other paper" that revealed, for the first time, information sufficient for CHRI to determine that Plaintiff's asserted economic

damages in this lawsuit exceeded the jurisdictional minimum for federal diversity jurisdiction.  The Certified Deposition Transcript showed that in February 2018, Plaintiff had, for the first time, obtained subsequent employment following her termination from CHRI, and had earned $20 per hour for 20 hours a week ("February Replacement Employment"). (*Id*. at ¶ 12, Ex. 15, 462:23-464:13).  The Certified Deposition Transcript also showed that Plaintiff had not earned any other income – other than income from the February Replacement Employment – following the termination of her employment CHRI.  (*Id*. at 462:10-22).  As a result, it was now possible to calculate, and it was now unequivocally clear – for the first time – that Plaintiff was seeking more than $75,000 in this action based upon her economic damages alone.

### F.     CHRI Files Its Motion For Summary Judgment In Order To Preserve The Status Quo In State Court.

Having received an "other paper" showing federal court jurisdiction, CHRI removed this case to federal court for a second time on April 18, 2018.  This was within 30 days of its receipt of the Certified Deposition Transcript.  (ECF No. 3).  Just five days prior to removing this case, on April 13, 2018, CHRI, facing an imminent summary judgment filing deadline of April 24, 2018, and in an effort to preserve its rights and maintain the *status quo*, filed its motion summary judgment in state court.  CHRI filed the motion for summary judgment solely as a defensive action: it sought to preserve its right to seek dispositive relief in state court in the unlikely, but possible, event that the matter was remanded by this Court, since any remand would occur *after* the time for moving for summary judgment had expired. (*See* Sholkoff Decl., ¶ 14).  Plaintiff has not responded to the motion for summary judgment, and the State Court has not held a hearing on it.  (*Id.*)

### G.     Plaintiff Prematurely Files The Instant Motion to Remand.

Central District of California Local Rule 7-3 requires the party filing a motion such as the instant one to meet and confer, "preferably in person, . . . at least seven

(7) days prior to the filing of the motion." L.R. 7-3. Moreover, this Court's Initial Standing Order amplifies the Local Rule, stating:

> The court takes this rule seriously, and counsel shall discharge their obligations under Local Rule 7-3 in good faith. The purpose of the Local Rule 7-3 prefiling conference is twofold: first, it facilitates possible informal resolution of an issue without court intervention; second, *it enables the parties to brief the remaining disputes in a thoughtful, concise and useful manner.*

(Initial Standing Order, IV. A. 2.). Local Rule 83-7 provides that a party's "violation of or failure to conform to any of these Local Rules may subject the offending party" to monetary sanctions, imposition of costs and attorneys' fees to opposing counsel, or "such other sanctions as the Court may deem appropriate under the circumstances."

Late in the afternoon on May 3, 2018, Plaintiff's Counsel informed CHRI's Counsel of Plaintiff's intention to seek remand. Plaintiff's Counsel asked CHRI's Counsel to "please advise by the close of business on May 10, 2018" whether CHRI would stipulate to remand. Plaintiff's Counsel also suggested three potential meet and confer times on May 7, 8 and 9. (Sholkoff Decl, ¶ 16, Ex. 16). On May 8, 2018 –well before Plaintiff's original deadline of May 10, 2018 – CHRI's Counsel suggested having a discussion on May 9, 2018 at 11:30 a.m. (Sholkoff Decl., ¶ 17).

Counsel for Plaintiff conducted a perfunctory meet-and-confer with CHRI's Counsel on May 9, 2018. (Declaration of Sam Sani ("Sani Decl."), ¶ 14, ECF No. 18-2).[3] The following day, in violation of Rule 7-3's requirement that the

---

[3] Despite this Court's Standing Order indicating that one of the purposes of the pre-filing meeting of counsel is to *enable the parties to brief the remaining disputes in a thoughtful, concise and useful manner,* Plaintiff's Counsel clearly prepared his papers well before the meeting of May 9, revealing that Plaintiff's Counsel had little intention of trying to resolve the matter without the need for a motion. Specifically, Plaintiff's Counsel's declaration falsely states that he met and conferred with both Jack Sholkoff and Douglas Yang. In previous meetings between counsel, both Mr. Sholkoff and Mr. Yang had generally participated; however, in this meeting, only

9

moving party must wait *at least seven days* after the meet and confer session before filing the Motion to Remand, Plaintiff's Counsel prematurely filed the instant Motion to Remand.  (ECF No. 18).

## III.   ARGUMENT

### A.   CHRI's Removal To Federal Court Was Timely And Proper.

#### 1.   The certified deposition transcript was the first "other paper" from which CHRI could ascertain that the amount in controversy exceeded $75,000.

Federal law permits successive removal where the case "stated by the initial pleading is not removable" if the successive removal is "filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper from which it may first be ascertained that the case is one which is or has become removable*." 28 U.S.C. § 1446(b)(3). The "other paper" must result from a voluntary act of a plaintiff that gives a defendant notice of the changed circumstances which support federal jurisdiction. *Owen v. L'Occitane, Inc*., No. CV 12–09841 MMM(JCGx), 2013 WL941967, *8 (C.D. Cal. Mar. 8, 2013).  In other words, a defendant is not required to speculate facts that support removal jurisdiction.[4]  *Jong v. Gen. Motors Corp*., 359 F. Supp. 223, 226 (N.D. Cal. 1973); *see also Durham v. Lockheed Martin Corp*., 445 F.3d 1247, 1251 (9th Cir. 2006).  In the instant action, CHRI removed the case because the Certified Deposition Transcript was the "other paper" from which it could be first ascertained that the case was removable.  As, noted, the Certified Deposition Transcript revealed the extent of Plaintiff's alleged economic damages, and for the first time, showed

---

Mr. Sholkoff attended. Mr. Yang was not present.   Plaintiff clearly prepared the declaration prior to the actual meeting.

[4] Plaintiff's argument that the amount in controversy could have been determined via a Case Management Conference Statement is nonsensical in light of the Court's initial remand order.  When CHRI first removed this case to federal court, it knew and in fact presented evidence to this court that the amount in controversy exceeded $50,000.00 due to the lost wages at issue at the time of the first removal.  (2:17-cv-05210-FMO-E, ECF No. 1).  The CMC Statement is of no moment.

34137650_1.docx

that they were potentially in excess of $75,000.  (*See Notice of Removal, ¶¶* 5; 13;
27-30, ECF No. 3).  CHRI received the Certified Deposition Transcript on March 19,
2018 and removed the action 30 days later, on April 18, 2018.

<div align="center">

**(a)**     **Plaintiff's oral deposition testimony does not trigger the
removal statute's 30-day clock.**

</div>

The Certified Deposition Transcript reflects testimony delivered on March 5,
2018.  However, neither the Supreme Court nor the Ninth Circuit Court of Appeals
has specifically addressed the precise issue of whether oral testimony alone – and not
the transcript of the oral testimony – constitutes the "other paper" required by
28 U.S.C. § 1446(b)(3) to commence the 30 day clock for filing a notice of removal.
However, most recently, the Fifth Circuit Court of Appeals squarely examined the
issue, and in *Morgan v. Huntington Ingalls, Inc*., 879 F.3d 602 (5th Cir. 2018) held
that only the receipt of an official deposition transcript, and not the giving of oral
testimony, triggered the 30 day removal clock.

In *Morgan*, the defendants removed a lawsuit to federal court within 30 days
of receipt of an official deposition transcript,[5] but 38 days after the date of the
deposition.  *Id*. at 605.  The district court had remanded the case after holding that
the removal clock began ticking from the date of the deposition and not the delivery
of the official transcript.  *Id*.  The question presented on appeal was whether oral
testimony provided at a deposition could be considered to be "other paper."[6] *Id*. at
608. The Fifth Circuit held that oral deposition testimony itself ***does not*** qualify as

---

[5] (*See* Request for Judicial Notice, Exs. B-D).  The deposition transcript in *Morgan*
that was attached as an exhibit to the Notice of Removal reveals that the defendant
relied upon the final copy—and not a rough draft—of the deposition transcript in
removing the case.  The email showing transmission of the transcript reveals delivery
of a full transcript, a condensed transcript, and a word index, and not just a "rough"
draft of the transcript.  (*See* Request for Judicial Notice, Ex. D).  Unlike the rough
transcript at issue in the instant action, nothing in the email indicates that the
transcript is anything but an official one.

[6] The Fifth Circuit had previously ruled that a deposition transcript qualifies as
"other paper" in *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 494 (5th Cir. 1996).

34137650_1.docx

"other paper" under the removal statute.  *Id*.  Instead, the Court held, "[w]e adopt a bright-line rule today: Section 1446(b)(3)'s removal clock begins ticking upon receipt of the deposition transcript." *Id.* at 612.  In so holding, the Fifth Circuit examined "[t]he plain meaning of, purpose of, and policy considerations" behind the removal statute, and found that none supported the proposition that oral deposition testimony—as opposed to the official transcript of said testimony--could serve as a basis to remove a case to federal court.  *Id*. at 608.  As the appellate court explained,

> The plain meaning of each of these words suggests that the information giving notice of removal must be contained in a writing. The defendant must actually "receive" a "copy" of the pertinent information. To say that a defendant receives a copy of the information upon oral testimony defies logic. The definition of "paper" contemplates a written "document" or "instrument." The definition of "copy" specifically states that the "double" must be in "writing." Oral testimony is not a written document or instrument. Further, as *Bosky* [*v. Kroger Texas, LP*, 288 F.3d 208 (5th Cir. 2002)] explains, "ascertain" requires a high level of certainty. Although it is possible that an oral deposition can provide such certainty, transcripts are often the key that a court must use to evaluate disputes over whether the testimony forms the basis for removal.

*Id*. at 609 (footnote omitted).

The appellate court then continued by explaining that the purpose of the removal statute would be better served by precluding oral deposition testimony from qualifying as "other paper", because "if we were to require removal on the day of the oral deposition, defendants are likely to remove immediately upon any whiff that removal is proper and before having the chance to review the record and confirm that they in fact can remove." *Id*. at 610 (footnote omitted).  Moreover, because the removing party always bears the burden of showing that removal is proper, "it is

34137650_1.docx

12

Case No. 2:18-cv-03268-FMO-E

CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF

counterintuitive to start the clock ***before obtaining the very evidence the defendant will rely on to support removal***." *Id*. at 611 (emphasis added).  Indeed, in order to determine whether a removal is proper, the Court concluded, a district court will have to "look at the transcript."  *Id.*  Thus, starting the clock before the certified transcript—which is the only form of transcript that a Court could examine that would have any validity--is received by the removing party makes little sense.

The *Morgan* decision comports with the removal statute's plain language and purpose.  It holds that the removal deadline begins to approach upon receipt of the official transcript for the proceeding, and not from the date of the deposition itself.  Nonetheless, CHRI suspects that Plaintiff will cite to *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010) even though *Carvalho* is inapposite, since the issue of whether the triggering event is the date of the deposition or the date of the transcript was not at issue in *Carvahlo*.  In fact, there is no discussion regarding the deposition transcript at all in *Carvahlo*; the Ninth Circuit merely held that deposition testimony could form a ground for removal.   As the Fifth Circuit in *Morgan* explained, *Carvalho* did not "actually address[] the issue of deposition testimony versus transcript. Th[is] case[] [is] better characterized as standing for the general idea that a deposition can constitute an 'other paper' than for actually deciding whether the defendant must remove within thirty days of the testimony or the transcript." *Morgan*, 879 F.3d at 611, n. 26.  The *Morgan* decision remains authoritative in its examination of removal statute, and its express holding that the removal clock begins ticking from receipt of the deposition transcript, and not from the date of the oral testimony. *See also Godoy v. Winco Holding, Inc.,* Case No. 15-CV-01397-ODW-SP, 2015 WL 6394474, *4 (C.D. Cal. Oct. 22, 2015) (holding that 30-day removal clock arises from receipt of deposition transcript).[7]

---

[7] *But see Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999).  In *Huffman*, the Tenth Circuit held that, contrary to the plain meaning of section 1446(b)(3), the removal clock runs from the date of the deposition and not the receipt of transcript.  However, *Huffman* is neither controlling nor persuasive

13

34137650_1.docx

Accordingly, because CHRI did not receive a certified copy of the transcript until March 19, 2018 and then removed the action 30 days later, CHRI's removal was timely.

**(b)    Neither a rough draft of the transcript nor the LiveNotes of Plaintiff's oral deposition triggers the removal statute's clock.**

California Code of Civil Procedure section 2025.540 governs the memorialization of depositions by transcript.  Section 2025.540(b) provides:

"(b) When prepared as a rough draft transcript, the transcript of the deposition *may not be certified and may not be used, cited, or transcribed as the certified transcript* of the deposition proceedings. The rough draft transcript *may not be cited or used in any way* or at any time to rebut or contradict the certified transcript of deposition proceedings as provided by the deposition officer."  (emphasis added).

As the Code of Civil Procedure makes clear, a rough transcript is not an official, citable, or usable document.  The first page of the Rough Transcript makes this clear, stating in relevant part:

"This realtime text is unedited/uncertified . . .This realtime text is for the purpose augmenting counsel notes and shall not be recognized as an official transcript, nor shall it be used or cited in any way or any time to rebut or contradict the official certified transcript of the proceedings, pursuant to Code of Civil Procedure section 273(b)."

---

here.  In *Huffman,* the removing party based its removal not upon a deposition or receipt of a deposition transcript, but upon a subsequent *expert report.* The appellate court stated that deposition testimony could constitute the "other paper" contained in section 1446(b)(3) and then, in *dicta,* stated that the time should run from the date of the deposition regardless of when the transcript was received even though the issue of whether the time ran from the deposition date or the transcript date was not before the Court, since the removing party had not relied upon a deposition transcript to remove the action.

34137650_1.docx

(Sholkoff Decl., ¶ 11, Ex. 14).

In view Code of Civil Procedure section 2025.540 (and section 273(b), which is similar), as well as the court reporter's admonition, CHRI could not have relied upon the rough draft as an "other paper" to support its removal petition. And CHRI needed the transcript – the official version – to remove the case. As the appellate court in *Morgan* explained:

> Additionally, a removing defendant bears the burden of pointing to the evidence demonstrating that removal is proper. Where a removal is based on a statement made during the deposition, ***the transcript will often be used to evidence the alleged statement***. Thus, ***it is counterintuitive to start the clock before obtaining the very evidence the defendant will rely on to support removal***. Even under the Tenth Circuit's 'notice' standard, it is likely that a district court will need to sift through the deposition to determine whether the answer was 'clear and unequivocal' enough to trigger the thirty days. The main way to sift through the deposition will of course be to look at the transcript. In fact, that is exactly what Morgan does in his brief to show that 'Avondale was well aware of the implication of [Morgan's] testimony with respect to its planned removal.' Morgan devotes nearly two pages to combing the transcript.

*Morgan*, 879 F.3d at 611. Thus, in order to support its removal petition with the required "short and plain statement of the grounds for removal," 28 U.S.C. §1446(a), CHRI needed to cite to Plaintiff's testimony regarding her lack of employment and the evidence of her alleged economic damages. The only definitive way to present this evidence was to cite to the Certified Deposition Transcript, since California law, which governed the deposition at the time it was taken, prohibits ***any*** use of a rough transcript.

Accordingly, CHRI had to wait until it received the Certified Deposition

Transcript. The Code of Civil Procedure's distinction between a certified transcript and a rough draft is indicative of the level of trustworthiness a court should ascribe to a rough draft: none.  Similarly, LiveNotes, which involves a contemporaneous stream of text that appears and disappears in a matter of seconds as the deposition progresses (much like subtitles accompanying a live telecast), cannot adequately serve as "other paper" that would permit removal any more than the actual delivery of testimony can, because the text reflecting the reporter's immediate (and often erroneous) transcription disappears. Indeed, none of the examples provided in the removal statute, "amended pleading, motion, order[,]" share this distinctive characteristic.  Moreover, CHRI is unaware of any federal court decision that has held that LiveNotes, let alone a rough draft, qualifies as "other paper" for the purposes of the removal statute.

In sum, because the Certified Deposition Transcript is what memorializes the portion of Plaintiff's deposition testimony that both Parties agree gives rise to federal court jurisdiction in this action, and because CHRI was precluded from citing the rough transcript by California law, the removal clock began at the earliest, on March 19, 2018, when CHRI received the Certified Deposition Transcript of Plaintiff's second day of deposition testimony.

### 2. Plaintiff's October 2017 discovery motion did not demonstrate removability.

Contradicting her own sworn discovery responses, Plaintiff now contends that this case was removable as of October 27, 2017 – based upon Plaintiff's motion to compel and unsuccessful request for sanctions.  There are two problems with the position.

Initially, Counsel for Plaintiff's declaration in support of Plaintiff's motion to compel establishes only that Plaintiff ***actually incurred*** $900 in attorney's fees ("I spent 3.0 hours preparing the moving papers and supporting declaration . . .") (ECF 18-2, 29:1-2).  While the declaration states that Counsel "anticipate[s] spending

additional time on the motion to compel, there is no evidence that he actually did. Thus, there was no way for CHRI to provide specific evidence "of the amount of attorneys fees *incurred* as of the time of the removal" as required by this Court's Order Remanding Action (2:17-cv-05210-FMO-E, ECF No. 14, p. 5).

Moreover, Plaintiff's discovery responses cast significant doubt as to whether Plaintiff ever actually incurred the necessary attorney fees to put her over the $75,000.00 threshold. Plaintiff contends that the combination of her economic damages as of October 19, 2017 and her October 27, 2017 motion to compel (and supporting declaration regarding attorney's fees) put her over the jurisdictional threshold. (ECF 18-1, 14:1-6). But there is ambiguity with regard to Plaintiff's alleged attorney's fees – an ambiguity supported by Plaintiff's own discovery responses. Request for Admission No. 8 asked Plaintiff to: "Admit that YOU *seek* more than $75,000 in damages, attorneys fees, and costs from DEFENDANT in this Action." (Sholkoff Decl., ¶ 8, Ex. 10, p. 4). In response to this request, Plaintiff stated, in addition to spurious objections,[8] in relevant part:

> Plaintiff admits that Plaintiff's loss of income includes approximate wages that Plaintiff would have earned at Defendant based upon Plaintiff's hourly rate of $27,18. ***Plaintiff has made a reasonable inquiry concerning the matter in this particular request and the information known or readily obtainable is insufficient to enable Plaintiff to admit or deny the remainder of this request for admission at this time***, including because Plaintiff's 'damages' is the subject of expert opinion and ultimately left to the sole discretion of the trier of fact.

---

[8] Plaintiff objected that the terms "damages", "attorneys fees" and "costs" were subject to "multiple meanings in the context of this litigation"; that the request was overbroad, burdensome, oppressive, and harassing; that the request sought information that was not reasonably calculated to lead to the discovery of admissible evidence; that the request sought privileged information; and, that the request sought information that required expert opinion. (Sholkoff Decl., ¶ 9, Ex. 12, pp. 15-16).

17

(Sholkoff Decl., ¶ 9, Ex. 12, pp. 15-16).[9]  In other words, as of March 18, 2018, when Plaintiff verified her responses under oath, she did not have enough information to admit that she had – as Plaintiff now claims (but Plaintiff's Counsel's declaration does not actually state) – incurred $1,860 of attorney's fees in October 2017.  Indeed, if Plaintiff had actually incurred $1,860 in fees as a result of her unsuccessful motion to compel, she (or her lawyer) would have known about it.  And if Plaintiff had actually incurred the additional $1,860 in fees in October 2017, she had no basis for failing to provide this information in response to CHRI's Request for Admission No. 8.  By stating that the "information known or readily obtainable is insufficient to enable" her to admit that her claim for damages, attorney's fees, and costs exceeded $75,000, Plaintiff admitted, under oath, precisely what CHRI asserts here: that the alleged fees related to Plaintiff's motion to compel did not place Plaintiff over the jurisdictional threshold, and that the only basis for removing this action is Plaintiff's economic damages.  The first time CHRI learned that Plaintiff's economic damages exceeded $75,000 was from Plaintiff's deposition testimony in March, 2018.  Accordingly, Plaintiff's motion to compel did not give rise to the removability of this action; CHRI's April 18, 2018 Notice of Removal was timely.

### B.   CHRI Did Not Waive Its Right To Remove This Matter To Federal Court By Litigating In State Court Before It Learned That The Case Was Removable.

Plaintiff's Motion to Remand argues that CHRI waived its removal rights because it filed a motion for summary judgment, moved to compel discovery responses, and conducted discovery.  (Motion to Remand, pp. 10-11, ECF No. 18-1).  Plaintiff's position ignores nuance when it matters most.

"A waiver of the removal right must be clear and unequivocal." *Acosta v. Direct Merchs. Bank*, 207 F. Supp. 2d 1129, 1131 (S.D. Cal. 2002) (citing *Resolution*

---

[9] Pursuant to Code of Civil Procedure section 2033.220, Plaintiff was required to respond to the Request for Admission "as complete and straightforward as the information reasonably available to the responding party permits"; and, to "admit so much of the matter involved in the request as true."

34137650_1.docx

*Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994), as amended (Jan. 20, 1995)).[10]  As an initial matter, there can be no waiver of the right to remove a case before a case is removable.  *George v. Al-Saud*, 478 F. Supp. 773, 774 (N.D. Cal. 1979). More fundamentally, however, "[t]he waiver inquiry is not how much the case was litigated prior to removal; it is instead what did the defendant do after the case was *removable* that is fundamentally inconsistent with exercising its right of removal." *Hess v. Bonneville Blling & Collections, Inc*., No. 3:15-CV-05158-RBL, 2015 WL 3569230, *1 (W.D. Wash. June 5, 2015).  "The values of judicial economy, fairness, convenience and comity should guide courts in determining whether a finding of waiver is appropriate." *Trademark Remodeling, Inc. v. Rhines*, 853 F. Supp. 2d 532, 542 (D. Md. 2012) (internal quotations omitted) (*quoting Grubb v. Donegal Mut. Ins. Co*., 935 F.2d 57, 59 (4th Cir. 1991)).

      The evidence demonstrates that the case was removable only upon receipt of the Certified Deposition Transcript, which allowed CHRI to ascertain the amount in controversy in this case with the level of certainty that this Court requested through its prior remand order.  Thus, ***none*** of CHRI's conduct prior to March 18, 2018 may be subject to the waiver analysis.  However, even if such conduct could be viewed with the waiver lens, the act of engaging in discovery and motion practice concerning the same does not waive the right to remove a case to federal court. *See, e.g*., *Kosen v. Ruffing*, No. 08CV0793-LAB (WMc), 2009 WL 56040, *6 (S.D. Cal. Jan. 7, 2009) (discovery requests do not constitute waiver of right to remove); *Bolden v. Healthspring of Ala., Inc*., No. CV07-0413-CG-B, CV07-0414-CG-M, 2007 WL 4403588, *1 (S.D. Ala. Oct. 2, 2007) (finding the serving of deposition notices and discovery requests was not substantial action that would waive the right

---

[10] To the extent that Plaintiff attempts to make any significance of CHRI's filing of an Answer in state court prior to removing the case in the first instance, this argument has been roundly rejected by the courts. *See, e.g*., *Acosta*, 207 F. Supp. 2d at 1131 ("It is well-settled that merely filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute a waiver of the right to remove.") (citations omitted).

34137650_1.docx

to remove case to federal court).  This is especially the case, where, as here, a significant function of CHRI's discovery was to ascertain Plaintiff's purported damages and, therefore, the amount in controversy. *See Bechtelheimer v. Cont'l Airlines, Inc*., 755 F. Supp. 2d 1211, 1214 (M.D. Fla. 2010) (holding that "pre-removal discovery is permitted to ascertain, among other things, amount in controversy information.")

Nor does CHRI's filing of a motion for summary judgment just five days before removal constitute waiver. The mere act of filing a dispositive motion is not an automatic waiver of the right to remove a case.  For example, in *Kenny v. Wal-Mart Stores, Inc.,* 881 F.3d 786, 791 (9th Cir. 2018), the Ninth Circuit recently held that a defendant that filed a demurrer on the last day to respond to a complaint, and then removed the action *before* the plaintiff filed an opposition, "did not manifest an intent to litigate in state court much less an intent to affirmatively abandon [its] rights to a federal forum." (internal quotations omitted).   Similarly, other courts have accepted over the years that a defendant may file a motion to dismiss or a motion for summary judgment and still preserve the right to remove.  *See*, *e.g*., *Hess*, 2015 WL 3569230, at *1-2 (denying motion to remand after finding that act of filing motion for summary judgment did not constitute waiver); *Hill v. State Farm Mut. Auto. Ins*. Co., 72 F. Supp. 2d 1353, 1356 (M.D. Fla. 1999) ("the mere filing of a motion to dismiss followed by a timely and proper removal does not constitute waiver by participation"); *Bedell v. H.R.C. Ltd*., 522 F. Supp. 732, 738 & n. 23 (E.D. Ky. 1981) (recognizing that merely filing a motion to dismiss in state court is not a waiver because the state court has not adjudicated the matter.)  The rationale behind these courts' decisions is logical and fair: context matters, and in some instances the removing party **had to preserve its adjudicative rights in the state forum before risking a removal to federal court**.

In the instant action, CHRI filed its motion for summary judgment in state court with full knowledge that it would then remove the case to federal court.  As

stated in CHRI's Notice of Removal, the act of filing the motion for summary judgment was made "solely to preserve its rights and as a defensive measure[.]" (ECF No. 3, p. 3, n. 1).  Pursuant to California Code of Civil Procedure, the motion for summary judgment needed to be filed by April 24, 2018.  *See* Cal. Code Civ. P. § 437c.  With little time before the deadline, CHRI filed its motion for summary judgment solely to protect its ability to maintain a motion for summary judgment should the case be remanded back to state court. In light of the California Code of Civil Procedure's strict deadlines for filing motions for summary judgment and the uncertainties involved regarding deadlines in remanded cases, CHRI preserved its summary judgment rights by filing its motion in state court.   This does not constitute a waiver of the right to remove.  *See Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246-47 (11th Cir. 2004) (holding that removing party did not waive right to remove action by filing motion to dismiss because deadlines at state court may put defendant in a "quandary").

Fundamentally, "[a]ctions taken in state court to preserve the status quo are necessary defensive actions that do not cause a waiver of the right to remove." *Kosen*, 2009 WL 56040, at *6.  That is such the case here with CHRI's motion for summary judgment, to which no opposition or reply papers have been filed, on which no hearing has been heard and no tentative order has been issued.  *See Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 848 (S.D. Tex. 2013) (holding in that defendants did not waive right to compel arbitration of claims by filing motion for summary judgment two days prior to compelling arbitration).

In *Curl v. Beltsville Adventist Sch.*, the defendant filed a motion for summary judgment one day before removing the lawsuit to federal court. No. GJH-15-3133, 2016 WL 4382686, at *4 (D. Md. Aug. 15, 2016).  The district court declined to remand the case, recognizing that "in cases where a defendant files a notice of removal simultaneously with or shortly after taking defensive action in the state court proceeding, courts have found that such conduct does not signify the sort of

21

unequivocal intent to remain in state court necessary to constitute a waiver of the right to remove." *Id*. at *5 (citations omitted).  Based upon the context in which the defendant filed its motion for summary judgment, and the fact that the plaintiff had not responded to the motion – and the state court had not taken any action upon the motion, the district court held that the defendant's state court filings did not waive the right to remove the case.  *Id*.

Like the defendant's actions in *Curl*, the fact that CHRI filed its motion for summary judgment just days before removing the lawsuit to federal court, with no opposition papers having been filed and no hearing on CHRI's motion for summary judgment, is demonstrative that CHRI did not intend to waive its right to remove this case.  *Id*.; *see also Jackson v. St. Jude Med. Neuromodulation Div*., No. 2:14-CV-717-FTM-38DNF, 2015 WL 403227, *4 (M.D. Fla. Jan. 28, 2015) (denying motion to remand after finding the fact that defendant removed case prior to state court's ruling on dispositive motion showed that defendant did not "experiment[] at the State Court level and remove[] this matter only after it received an unfavorable decision.")

In short, CHRI's litigation in state court did not waive its right to remove the action once it became removable.

### C.   Plaintiff's Request For Attorney's Fees Should Be Denied.

#### 1.   The request for attorney's fees must be denied because CHRI had an objectively reasonable basis to remove this case to federal court.

A court *may* reward reasonable attorney's fees and costs incurred by the party seeking remand.  28 U.S.C. § 1447(c).[11]  However, the Supreme Court has made clear that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) *only* where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees

---

[11] Plaintiff's Motion to Remand inappropriately posits that an award of attorney's fees "should" be granted by the Court under 28 U.S.C. § 1447(c); that is not the language of the statute, and indeed goes against established case law.  (Motion to Remand, p. 11).

22                                                    Case No. 2:18-cv-03268-FMO-E

should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added). There is no presumption in favor of granting of such fees. *Id.* at 137; *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) (cautioning that "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.")  The Ninth Circuit Court of Appeals has recognized that even if it is a "close question" as to whether the removing party had an objectively reasonable basis to remove the case, the district court must not award fees to the party seeking remand. *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007).

Various federal courts sitting in California have held that where a specific amount in controversy is not alleged in the Complaint or "other paper" that started the 30-day time period for removal, an inherent ambiguity exists regarding "the exact amount in controversy at issue[,]" and "given this lack of clarity it cannot be said that Defendant[] lacked an objectively reasonable basis for seeking removal." *Mendoza v. Am. Airlines, Inc.*, No. CV 10-7617 RSWL (JCx), 2010 WL 5376375, *4 (C.D. Cal. Dec. 22, 2010) (citing *Jellinek v. Advance Prod. & Sys., Inc.*, No. 10CV1226JM (WMC), 2010 WL 3385998, *3 (S.D. Cal. Aug. 24, 2010)).

It is undisputed that Plaintiff's Complaint did not specify the amount in controversy.  Indeed, this Court recognized as much when it remanded this action following CHRI's first removal.  (2:17-cv-05210-FMO-E, ECF No. 14).  Thus, CHRI was left to determine whether the amount in controversy could be ascertained with such certainty that the Court would accept CHRI's arguments without remanding the action again.  Moreover, Plaintiff provided ambiguities and evasive responses in discovery in an effort to thwart CHRI's efforts to obtain clarity on the removal issue. Indeed, Plaintiff repeatedly attempted to stymie CHRI's good faith attempts to obtain the requisite information concerning the amount in controversy.

Once Plaintiff was deposed, however, and once CHRI received the Certified

Deposition Transcript in March, 2018, it became clear that despite Plaintiff's obfuscation, the case was removable, and CHRI promptly removed it. CHRI had an objectively reasonable basis, founded in law, to believe that its removal was timely, and that its litigation conduct in state court did not waive any right to removal. *See Carter v. Mae*, No. SACV 14-01754-CJC (JCGx), 2014 WL 7339208, *2 (C.D. Cal. Dec. 23, 2014) (declining to award attorney's fees where complaint did not specify amount in controversy and defendant "had an objectively reasonable basis for removal and raised sufficiently complex arguments regarding a defendant's duty to ascertain the amount in controversy.") Thus, CHRI requests that even if the Court should be inclined to remand this matter, that it do so without granting Plaintiff's request for fees.[12]

## IV.   CONCLUSION

This Court possesses subject matter jurisdiction over this action. CHRI had an objectively reasonable basis for removing this case, and in view of California law prohibiting the use of rough draft transcripts, as well as this Court's previous remand order, timely removed this action. For the foregoing reasons and any reasons that may become apparent during the hearing of the Motion to Remand, CHRI

---

[12] Counsel for Plaintiff's request for more than $15,000 in attorney's fees is excessive on its face. Plaintiff's Counsel contends that he "expect[s] to have expended 42 hours related to the Motion to Remand" in *toto*. (Sani Decl., ¶ 15). In addition, Plaintiff's Counsel has increased his hourly rate from $300 an hour in 2017 to a claimed $375 an hour today – an increase of 25 percent. (*Compare* Sholkoff Decl, ¶ 5, Ex. 6, ¶ 9 *with* Sani Decl., ¶ 15). Having sought excessive fees, Plaintiff's conduct warrants a complete denial of her request attorney's fees. *See Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1100 (E.D. Cal. 2011) (recognizing that "[c]ourts may reduce a requested fee award, or deny one altogether, where a fee request appears unreasonably inflated.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.")). Alternatively, CHRI requests that the Court compel Counsel for Plaintiff to produce his billing records, including his retention agreement with Plaintiff, to the Court for an *in-camera* review and/or audit. By disclosing a claimed amount of attorney's fees and by placing those fees in contention, Counsel for Plaintiff has waived any and all applicable privileges that could apply, and thus has no ground upon which he may rightfully refuse to comply. In this way, the Court can determine the validity of Plaintiff's Counsel's excessive claim.

34137650_1.docx

1  respectfully requests that the Court deny Plaintiff's Motion for Remand Action to

2  State Court and deny in its entirety, Plaintiff's request for $15,750.00 in Attorney

3  Fees (ECF No. 18).

4  DATED:  May 17, 2018                    OGLETREE, DEAKINS, NASH, SMOAK &
                                          STEWART, P.C.
5

6

7                                          By: /s/ Jack S. Sholkoff
                                              Jack S. Sholkoff
8                                              Y. Douglas Yang

9                                          Attorneys for Defendant
                                          C.H. ROBINSON INTERNATIONAL, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34137650_1.docx

25                    Case No. 2:18-cv-03268-FMO-E
CHRI'S OPPOSITION TO PLAINTIFF LORENA DAVID'S MOTION TO REMAND
ACTION TO STATE COURT AND TO AWARD $15,750.00 IN ATTORNEY FEES TO PLAINTIFF